FILED
DALLAS COUNTY
4/7/2017 7:13:58 PM
FELICIA PITRE
DISTRICT CLERK

Marissa Pittman

**CAUSE NO. _____**

DC-17-04160

| | | |
|---|---|---|
| The Estate of Bonell Rashti , | X | **IN THE DISTRICT COURT** |
| Plaintiff | X | |
| | X | |
| | X | |
| | X | |
| v. | X | |
| | X | |
| | X | |
| Bank of America National Association, | X | |
| and Specialized Loan Servicing, | X | |
| LLC, and QBE Americas, Inc. | X | |
| And BRIT Insurance, and | X | **OF DALLAS  COUNTY, TEXAS** |
| Certain Underwriters at Lloyds, | X | |
| London and Great Lakes | X | |
| Reinsurance (UK) PLC, and, the | X | |
| Bank of New York Mellon FKA | X | |
| the Bank of New York, as Trustee | X | |
| for the certificateholders of the | X | |
| CWABS, Inc. , Asset-Backed | X | |
| Certificates  series 2007-9 | X | |
| Defendants | X | **_____  JUDICIAL DISTRICT COURT** |

---

### PLAINTIFF'S ORIGINAL PETITION

---

TO THE HONORABLE JUDGE OF SAID COURT:

Plaintiff The Estate of Bonell Rashti Owner (hereinafter "The Estate of Bonell Rashti")

files its Original Petition against: Bank of America National Association  (hereinafter "Bank of

America"), and Specialized Loan Servicing,  LLC, (hereinafter "Specialized Loan Servicing"),

and QBE Americas, Inc. (hereinafter "QBE"), and  BRIT Insurance  (hereinafter "BRIT

Insurance "), and Certain Underwriters at Lloyds,  London and Great Lakes Reinsurance (UK)

PLC (hereinafter "Lloyds") and the Bank of New York Mellon FKA the Bank of New York, as

Trustee for the certificateholders of the CWABS, Inc., Asset-Backed Certificates  series 2007-9

(hereinafter "Bank of New York Mellon ")

and would respectfully show as follows.

## I.      PARTIES AND SERVICE OF PROCESS.

1.      Plaintiff  The Estate of Bonell  Rashti  (hereinafter "Estate of Bonell Rashti") is an estate being independently administered in Dallas County  Texas.

2.      Bank of America National Association is a foreign banking association  and may be served with process by serving its registered agent C T Corporation, 1999 Bryan Street, Suite 900, Dallas, TX 75201-3136.

3.      Specialized Loan Servicing,  LLC is a foreign limited liability company and may be served with process by serving its registered agent Capital Corporate Loan Services, Inc. at 206 E. 9th Street, Suite 1300, Austin, TX 78701.

4.      QBE Americas, Inc. is a foreign insurance corporation and may be served with process by serving its registered agent at C T Corporation, 1999 Bryan Street, Suite 900 Dallas, TX 75201-3136.

5.      BRIT Insurance is a foreign insurance company  and may be served with process by serving its registered agent Corporation Service Company Dba CSC Lawyers Incorporating Service Company, 211 E. 7th Street, Suite 620, Austin, TX 78701-4234.

6.      Certain Underwriters at Lloyds,  London and Great Lakes Reinsurance (UK) PLC is a foreign insurance company and may be served with process by serving its agent Seattle Speciality Insurance Services, Inc. by its registered agent Corporation Service Company Dba CSC Lawyers Incorporating Service Company, 211 E. 7th Street, Suite 620, Austin, TX 78701-4234.

7.      Bank of New York Mellon FKA the Bank of New York, as Trustee for the certificateholders of the CWABS, Inc., Asset-Backed Certificates  series 2007-9 is a foreign bank and may be served with process by serving its registered agent C T Corporation System, 1999 Bryan Street, Suite 900, Dallas, TX 75201-3136.

## II.     STATUTORY AUTHORITY.

4.      This suit is brought in part pursuant to TEX. BUS. & COM. CODE § 17.41  et

seq., commonly known as the Deceptive Trade Practices and Consumer Protection Act and cited in this petition as the "DTPA." This suit is brought in part pursuant to breach of Contract. This suit is brought in part pursuant to fraud. This suit is brought in part pursuant to misrepresentations. This suit is brought in part pursuant to negligent misrepresentations. This suit is brought in part pursuant to grossly negligent misrepresentations. This suit is brought in part pursuant to civil conspiracy. This suit is brought in part pursuant to the Texas Unfair Competition and Unfair Practices Act. This suit is brought in part pursuant to the Texas Prompt Payment of Claims Act. This suit is brought in part pursuant to the intentional breach of good faith and fair dealing common law. This suit is brought in part pursuant to the implied duty to cooperate that is implied in contracts in common law. This suit is brought in part pursuant to promissory estoppel. This suit is brought in part pursuant to the violations of RESPA and Regulation X of the Code of Federal Regulations. This suit is brought in part pursuant to the violations of the Texas Debt Collection Act.

5.     Discovery in this case is intended to be conducted under Level 2 pursuant to Rule 190.3, *Texas Rules of Civil Procedure*.

**III.   VENUE**.

6.     Venue of this action is proper in the county of suit because the Estate of Bonell Rashti is being independently administered in Dallas County Texas, and the address of The Estate of Bonell Rashti during all times material herein was in Dallas County Texas. Venue of this action is also proper in this county because Defendants or an authorized agent of Defendants solicited the transactions on which this lawsuit is based in the county of suit. Venue of this action is also proper in this county because Defendants engage in business in Dallas County Texas.

**IV.   NOTICE: CONDITIONS PRECEDENT.**

7.     Defendants were given notice in writing of the claims made in this petition including a statement of Plaintiff's economic damages and expenses, including attorney's fees, more than sixty days before this suit was filed in the manner and form required by DTPA §

17.505(a). This notice was received on or about November 21, 2016, November 22, 2016, November 23, 2016, January 30, 2017, March 9, 2017, and March 10, 2017.

8.      All conditions precedent necessary to maintain this action have been performed or have occurred.

## V.      **THE TRANSACTION**.

9.      This lawsuit arises out of the following transaction, acts and events:

**BANK OF AMERICA SPECIFIC FACTS**

10.     Bank of America is wrongfully holding and refuses to return $73,473.38 in funds for repairs to property of The Estate of Bonell Rashti. This has irreparably damaged The Estate of Bonell Rashti.  Further, Bank of America has repeatedly made misrepresentations to The Estate of Bonell Rashti. Upon information and belief Bank of America has also conspired with others to tortiously interfere with the business of The Estate of Bonell Rashti.

11.     Bank of America's actions have also irreparably damaged The Estate of Bonell Rashti by causing The Estate of Bonell Rashti to lose business opportunities that would have allowed The Estate of Bonell Rashti to sell the real property in question at a net gain of approximately $426,110.00. Bank of America's conduct is illegal, fraudulent, and violates numerous state and federal statutes, including but not limited to Texas Deceptive Trade Practices - Consumer Protection Act.  Bank of America's conduct is also unconscionable.

12.     Upon information and belief Bank of America also conspired with the flood insurer to further damage The Estate of Bonell Rashti. Upon information and belief Bank of America also deliberately has created a technical default to generate fees and penalties or acquire the property in question at a windfall to Bank of America and/or others that Bank of America has conspired with.

13.     Upon information and belief Bank of America also deliberately has interfered with The Estate of Bonell Rashti's day-to-day activities and contractual relations with third parties.

14.     Upon information and belief Bank of America also deliberately has breached the fiduciary duty that Bank of America owes to The Estate of Bonell Rashti.

15.     Upon information and belief Bank of America also deliberately tortiously interfered with  contractual relations and potential contractual relations with third parties relating to The Estate of Bonell Rashti.

16.     Upon information and belief Bank of America also deliberately tortiously interfered with The Estate of Bonell Rashti's management of the property in question.

17.     Upon information and belief Bank of America has also committed fraud on The Estate of Bonell Rashti's concerning the property in question.

18.     There was and is no justifiable basis for Bank of America's actions.

19.     **To date there has been no full and fair review of Bank of America's actions that is required pursuant to the United States Constitution and the Texas Constitution and the applicable statutory and common law related thereto.**

20.      Bank of America's actions have caused The Estate of Bonell Rashti to suffer actual out-of-pocket damages of at least $730,364.37 as of November 16, 2016.  Additionally, Bank of America's actions have caused The Estate of Bonell Rashti to suffer additional damages for amounts that The Estate of Bonell Rashti will have to pay to correct the damages to The Estate of Bonell Rashti that occurred to The Estate of Bonell Rashti and were caused by Bank of America.

21.     On February 8, 2017 counsel for The Estate of Bonell Rashti  orally obtained information from counsel for the flood insurer who stated that in fact, The Estate of Bonell Rashti  was not the insured, but the flood insurer's contract was with Bank of America and the flood insurer could not release any information to counsel for The Estate of Bonell Rashti without Bank of America's approval. Misstating the identity of the insured violates various provisions of the Texas Deceptive Trade Practices and Consumer Protection Act, as well as various federal statutes. Further, the admission by counsel for Bank of America's  co-

conspirators is also *prima facie* evidence of the civil conspiracy and other fraudulent activities that   Bank of America has perpetrated and continues to perpetrate.

22.    Bank of America has refused to provide counsel for The Estate of Bonell Rashti with copies of all correspondence between Bank of America  and the flood insurer and/or counsel for the flood insurer.

23.    Bank of America has refused to proceed with filing claims against QBE Americas, Inc. and BRIT Insurance and/or Certain Underwriters at Lloyds,  London and Great Lakes Reinsurance (UK) PLC for The Estate of Bonell Rashti's benefit as a third-party beneficiary of Bank of America's alleged contracts with the flood insurers.

24.    On May 25, 2015 and again on April 18, 2016 The Estate of Bonell Rashti's real property located at 5207 Braesheather Drive Houston, TX 77096  was damaged because of neighborhood wide floods. Upon information and belief the property was insured, and/or administered by QBE Americas, Inc. and/or  BRIT Insurance and/or Certain Underwriters at Lloyds,  London and Great Lakes Reinsurance (UK) PLC under two separate flood insurance policies ( together the "Policies") concerning Claim Number L16008586 (Date of Loss 4/18/2016) and/or Claim Number L15020924 (Date of Loss 5/25/2015) (sometimes herein together  referred to as the "Claim").  All payments on the Policy were current, and the Policy was in force on the date of the losses.

24.     Bank of America's conduct constitutes unfair and deceptive acts or practices in the business of the sale and safekeeping of mortgages and escrow monies.

25.    Bank of America's conduct and Bank of America's actions relative to this particular transaction violate applicable law relative to Bank of America's fiduciary obligation that Bank of America owed to The Estate of Bonell Rashti, that Bank of America totally violated by Bank of America's illegal and fraudulent activities.

26.    Bank of America's conduct and Bank of America's actions relative to this particular transaction violate applicable law relative to Bank of America's fraud that Bank of

America committed.

27.     Bank of America's conduct and Bank of America's actions relative to this particular transaction constitute breach of contract with The Estate of Bonell Rashti.

28.     Bank of America's conduct and Bank of America's actions relative to this particular transaction constitute racketeering.

29.     Bank of America's conduct and Bank of America's actions relative to this particular transaction violate certain statutory, regulatory and common law provisions relative to mortgages and escrowed monies.

30.     Bank of America's conduct and Bank of America's actions relative to this particular transaction constitute breach of fiduciary duty.

31.     Bank of America's conduct and Bank of America's actions relative to this particular transaction constitute negligent misrepresentations.

32.     Bank of America's conduct and Bank of America's actions relative to this particular transaction constitute fraudulent inducement.

33.     Bank of America's conduct and Bank of America's actions relative to this particular transaction constitute common-law fraudulent concealment and deceit.

34.     Bank of America's conduct and Bank of America's actions relative to this particular transaction constitute reckless, wanton and/or negligent supervision.

35.     Bank of America's conduct and Bank of America's actions relative to this particular transaction constitute breach of the common-law duty of good faith and fair dealing.

36.     Bank of America's conduct and Bank of America's actions relative to this particular transaction constitute breach of the  implied  duty to cooperate that is implied into contracts.

37.     Bank of America's conduct and Bank of America's actions relative to this particular transaction constitute fiduciary fraud.

38.     Bank of America's conduct and Bank of America's actions relative to this

particular transaction constitute negligence.

39.     Bank of America's conduct and Bank of America's actions relative to this particular transaction constitute gross negligence.

40.     Bank of America's conduct and Bank of America's actions relative to this particular transaction constitute violations of the Texas Insurance Code articles 21.20 and 21.21 sections 4 and 16, State Board of Insurance order 18663, as a *de facto* insurer.

41.     Bank of America's conduct constitutes unfair and deceptive acts or practices in the business of insurance in violation of article 21.21 section 16 of the Texas Insurance Code, as a *de facto* insurer.

42.     Bank of America's conduct and Bank of America's actions relative to this particular transaction constitute an illegally collected commission pursuant to Texas Insurance Code article 21.07-1 et seq, as a *de facto* insurer.

43.     Bank of America's conduct and Bank of America's actions relative to this particular transaction constitute civil liability under section 33.002 of the Texas Civil Practices and Remedies Code which provides for damages for criminal conduct in violation of section 32.45 of the Texas Penal Code (proscribing misapplication by a fiduciary of property that has been entrusted to him) and section 162.031 of the Texas Property Code (proscribing misapplication of trust funds).

**FLOOD INSURERS SPECIFIC FACTS**

44.     After the losses described above, The Estate of Bonell Rashti  made two claims to QBE Americas, Inc. and/or  BRIT Insurance and/or Certain Underwriters at Lloyds,  London and Great Lakes Reinsurance (UK) PLC, insurance claim no. Claim Number L15020924 and  Claim Number L16008586  (together the "Claim"). Although the Claim was submitted in proper form and within the time specified in the insurance Policy, QBE Americas, Inc. and/or  BRIT Insurance and/or Certain Underwriters at Lloyds,  London and Great Lakes Reinsurance (UK) PLC effectively denied the Claim by: (1) failing to make payments for losses to The Estate of Bonell

Rashti ; (2) failing to make payments to The Estate of Bonell Rashti  for amounts paid by or on behalf of The Estate of Bonell Rashti  to cover losses that QBE Americas, Inc. and/or  BRIT Insurance and/or Certain Underwriters at Lloyds,  London and Great Lakes Reinsurance (UK) PLC  indicated would be covered by the Policy and reimbursed The Estate of Bonell Rashti; (3) failing to compensate The Estate of Bonell Rashti for the effective denial of the use of The Estate of Bonell Rashti's  property because of the wrongful acts of QBE Americas, Inc. and/or  BRIT Insurance and/or Certain Underwriters at Lloyds,  London and Great Lakes Reinsurance (UK) PLC.  There was and is no justifiable basis for the effective denial by QBE Americas, Inc. and/or BRIT Insurance and/or Certain Underwriters at Lloyds,  London and Great Lakes Reinsurance (UK) PLC.

45.     QBE Americas, Inc. and/or  BRIT Insurance and/or Certain Underwriters at Lloyds,  London and Great Lakes Reinsurance (UK) PLC's  effective wrongful denial of The Estate of Bonell Rashti 's Claim has effectively caused The Estate of Bonell Rashti to  lose use of its property. Additionally, QBE Americas, Inc. and/or  BRIT Insurance and/or Certain Underwriters at Lloyds,  London and Great Lakes Reinsurance (UK) PLC's  effective wrongful denial of The Estate of Bonell Rashti's  Claim has caused The Estate of Bonell Rashti  to suffer additional damages for amounts that The Estate of Bonell Rashti  will have to pay to correct the damages that have occurred to the property, but have yet to be repaired. QBE Americas, Inc. and/or  BRIT Insurance and/or Certain Underwriters at Lloyds,  London and Great Lakes Reinsurance (UK) PLC's failure to timely and properly process the Claim has caused The Estate of Bonell Rashti significant additional damages.

46.     This has irreparably damaged The Estate of Bonell Rashti.  Further, QBE Americas, Inc. and/or  BRIT Insurance and/or Certain Underwriters at Lloyds,  London and Great Lakes Reinsurance (UK) PLC have repeatedly made misrepresentations to The Estate of Bonell Rashti. Upon information and belief QBE Americas, Inc. and/or  BRIT Insurance and/or Certain Underwriters at Lloyds,  London and Great Lakes Reinsurance (UK) PLC have also conspired

with others to tortiously interfere with the business of The Estate of Bonell Rashti.

47.     QBE Americas, Inc. and/or  BRIT Insurance and/or Certain Underwriters at Lloyds,  London and Great Lakes Reinsurance (UK) PLC's actions have also irreparably damaged The Estate of Bonell Rashti by causing The Estate of Bonell Rashti to lose business opportunities that would have allowed The Estate of Bonell Rashti to sell the real property in question at a net gain of approximately $426,110.00. QBE Americas, Inc. and/or  BRIT Insurance and/or Certain Underwriters at Lloyds,  London and Great Lakes Reinsurance (UK) PLC's conduct is illegal, fraudulent, and violates numerous state and federal statutes, including but not limited to Texas Deceptive Trade Practices - Consumer Protection Act.  QBE Americas, Inc. and/or  BRIT Insurance and/or Certain Underwriters at Lloyds,  London and Great Lakes Reinsurance (UK) PLC's conduct is also unconscionable.

48.     Upon information and belief QBE Americas, Inc. and/or  BRIT Insurance and/or Certain Underwriters at Lloyds,  London and Great Lakes Reinsurance (UK) PLC also conspired with the mortgage holder  to further damage The Estate of Bonell Rashti.

49.     Upon information and belief QBE Americas, Inc. and/or  BRIT Insurance and/or Certain Underwriters at Lloyds,  London and Great Lakes Reinsurance (UK) PLC also deliberately have breached the fiduciary duties that QBE Americas, Inc. and/or  BRIT Insurance and/or Certain Underwriters at Lloyds,  London and Great Lakes Reinsurance (UK) PLC owe to The Estate of Bonell Rashti.

50.     Upon information and belief QBE Americas, Inc. and/or  BRIT Insurance and/or Certain Underwriters at Lloyds,  London and Great Lakes Reinsurance (UK) PLC have also committed fraud on The Estate of Bonell Rashti's concerning the property in question.

51.     There was and is no justifiable basis for QBE Americas, Inc. and/or  BRIT Insurance and/or Certain Underwriters at Lloyds,  London and Great Lakes Reinsurance (UK) PLC's actions.

52.     **To date there has been no full and fair review of QBE Americas, Inc. and/or**

**BRIT Insurance and/or Certain Underwriters at Lloyds,  London and Great Lakes Reinsurance (UK) PLC's actions that is required pursuant to the United States Constitution and the Texas Constitution and the applicable statutory and common law related thereto.**

53.     QBE Americas, Inc. and/or  BRIT Insurance and/or Certain Underwriters at Lloyds,  London and Great Lakes Reinsurance (UK) PLC's actions have caused The Estate of Bonell Rashti to suffer actual out-of-pocket damages of at least $614,886.99.  Additionally, QBE Americas, Inc. and/or  BRIT Insurance and/or Certain Underwriters at Lloyds,  London and Great Lakes Reinsurance (UK) PLC's actions have caused The Estate of Bonell Rashti to suffer additional damages for amounts that The Estate of Bonell Rashti will have to pay to correct the damages to The Estate of Bonell Rashti that occurred to The Estate of Bonell Rashti  and were caused by QBE Americas, Inc. and/or  BRIT Insurance and/or Certain Underwriters at Lloyds, London and Great Lakes Reinsurance (UK) PLC.

54.     QBE Americas, Inc. and/or  BRIT Insurance and/or Certain Underwriters at Lloyds,  London and Great Lakes Reinsurance (UK) PLC's  conduct constitutes unfair and deceptive acts or practices in the business of insurance in violation of Article 21.21 Section 16 of the Texas Insurance Code.

55.     Additionally, QBE Americas, Inc. and/or  BRIT Insurance and/or Certain Underwriters at Lloyds,  London and Great Lakes Reinsurance (UK) PLC's conduct and QBE Americas, Inc. and/or  BRIT Insurance and/or Certain Underwriters at Lloyds,  London and Great Lakes Reinsurance (UK) PLC's actions relative to this particular transaction violate applicable portions of § 17.46 of the Texas Deceptive Trade Practices - Consumer Protection Act.

56.     QBE Americas, Inc. and/or  BRIT Insurance and/or Certain Underwriters at Lloyds,  London and Great Lakes Reinsurance (UK) PLC's conduct and QBE Americas, Inc. and/or  BRIT Insurance and/or Certain Underwriters at Lloyds,  London and Great Lakes Reinsurance (UK) PLC's actions relative to this particular transaction violate applicable law relative to QBE Americas, Inc. and/or  BRIT Insurance and/or Certain Underwriters at Lloyds,

London and Great Lakes Reinsurance (UK) PLC's fiduciary obligation that QBE Americas, Inc. and/or BRIT Insurance and/or Certain Underwriters at Lloyds, London and Great Lakes Reinsurance (UK) PLC owed to The Estate of Bonell Rashti, that QBE Americas, Inc. and/or BRIT Insurance and/or Certain Underwriters at Lloyds, London and Great Lakes Reinsurance (UK) PLC totally violated by QBE Americas, Inc. and/or BRIT Insurance and/or Certain Underwriters at Lloyds, London and Great Lakes Reinsurance (UK) PLC's illegal and fraudulent activities.

57.     QBE Americas, Inc. and/or BRIT Insurance and/or Certain Underwriters at Lloyds, London and Great Lakes Reinsurance (UK) PLC's conduct and QBE Americas, Inc. and/or BRIT Insurance and/or Certain Underwriters at Lloyds, London and Great Lakes Reinsurance (UK) PLC's actions relative to this particular transaction violate applicable law relative to QBE Americas, Inc. and/or BRIT Insurance and/or Certain Underwriters at Lloyds, London and Great Lakes Reinsurance (UK) PLC's fraud that QBE Americas, Inc. and/or BRIT Insurance and/or Certain Underwriters at Lloyds, London and Great Lakes Reinsurance (UK) PLC's committed.

58.     QBE Americas, Inc. and/or BRIT Insurance and/or Certain Underwriters at Lloyds, London and Great Lakes Reinsurance (UK) PLC's conduct and QBE Americas, Inc. and/or BRIT Insurance and/or Certain Underwriters at Lloyds, London and Great Lakes Reinsurance (UK) PLC's actions relative to this particular transaction constitute breach of contract with The Estate of Bonell Rashti or third party beneficiary breach.

59.     QBE Americas, Inc. and/or BRIT Insurance and/or Certain Underwriters at Lloyds, London and Great Lakes Reinsurance (UK) PLC's conduct and QBE Americas, Inc. and/or BRIT Insurance and/or Certain Underwriters at Lloyds, London and Great Lakes Reinsurance (UK) PLC's actions relative to this particular transaction constitute racketeering.

60.     QBE Americas, Inc. and/or BRIT Insurance and/or Certain Underwriters at Lloyds, London and Great Lakes Reinsurance (UK) PLC's conduct and QBE Americas, Inc.

and/or  BRIT Insurance and/or Certain Underwriters at Lloyds,  London and Great Lakes Reinsurance (UK) PLC's actions relative to this particular transaction constitute breach of fiduciary duty.

61.     QBE Americas, Inc. and/or  BRIT Insurance and/or Certain Underwriters at Lloyds,  London and Great Lakes Reinsurance (UK) PLC's conduct and QBE Americas, Inc. and/or  BRIT Insurance and/or Certain Underwriters at Lloyds,  London and Great Lakes Reinsurance (UK) PLC's actions relative to this particular transaction constitute common-law fraudulent concealment and deceit.

62.     QBE Americas, Inc. and/or  BRIT Insurance and/or Certain Underwriters at Lloyds,  London and Great Lakes Reinsurance (UK) PLC's conduct and QBE Americas, Inc. and/or  BRIT Insurance and/or Certain Underwriters at Lloyds,  London and Great Lakes Reinsurance (UK) PLC's actions relative to this particular transaction constitute reckless, wanton and/or negligent supervision.

63.     QBE Americas, Inc. and/or  BRIT Insurance and/or Certain Underwriters at Lloyds,  London and Great Lakes Reinsurance (UK) PLC's conduct and QBE Americas, Inc. and/or  BRIT Insurance and/or Certain Underwriters at Lloyds,  London and Great Lakes Reinsurance (UK) PLC's actions relative to this particular transaction constitute breach of the common-law duty of good faith and fair dealing.

64.     QBE Americas, Inc. and/or  BRIT Insurance and/or Certain Underwriters at Lloyds,  London and Great Lakes Reinsurance (UK) PLC's conduct and QBE Americas, Inc. and/or  BRIT Insurance and/or Certain Underwriters at Lloyds,  London and Great Lakes Reinsurance (UK) PLC's actions relative to this particular transaction constitute breach of the implied  duty to cooperate that is implied into contracts.

65.     QBE Americas, Inc. and/or  BRIT Insurance and/or Certain Underwriters at Lloyds,  London and Great Lakes Reinsurance (UK) PLC's conduct and QBE Americas, Inc. and/or  BRIT Insurance and/or Certain Underwriters at Lloyds,  London and Great

Reinsurance (UK) PLC's actions relative to this particular transaction constitute fiduciary fraud.

66.     QBE Americas, Inc. and/or  BRIT Insurance and/or Certain Underwriters at Lloyds,  London and Great Lakes Reinsurance (UK) PLC's conduct and QBE Americas, Inc. and/or  BRIT Insurance and/or Certain Underwriters at Lloyds,  London and Great Lakes Reinsurance (UK) PLC's actions relative to this particular transaction constitute violations of the Texas Insurance Code articles 21.20 and 21.21 sections 4 and 16, State Board of Insurance order 18663.

67.     QBE Americas, Inc. and/or  BRIT Insurance and/or Certain Underwriters at Lloyds,  London and Great Lakes Reinsurance (UK) PLC's conduct constitutes unfair and deceptive acts or practices in the business of insurance in violation of article 21.21 section 16 of the Texas Insurance Code.

68.     QBE Americas, Inc. and/or  BRIT Insurance and/or Certain Underwriters at Lloyds,  London and Great Lakes Reinsurance (UK) PLC's conduct and QBE Americas, Inc. and/or  BRIT Insurance and/or Certain Underwriters at Lloyds,  London and Great Lakes Reinsurance (UK) PLC's actions relative to this particular transaction constitute an illegally collected commission pursuant to Texas Insurance Code article 21.07-1 et seq.

69.     QBE Americas, Inc. and/or  BRIT Insurance and/or Certain Underwriters at Lloyds,  London and Great Lakes Reinsurance (UK) PLC's conduct and QBE Americas, Inc. and/or  BRIT Insurance and/or Certain Underwriters at Lloyds,  London and Great Lakes Reinsurance (UK) PLC's actions relative to this particular transaction constitute civil liability under section 33.002 of the Texas Civil Practices and Remedies Code which provides for damages for criminal conduct in violation of section 32.45 of the Texas Penal Code (proscribing misapplication by a fiduciary of property that has been entrusted to him) and section 162.031 of the Texas Property Code (proscribing misapplication of trust funds).

**SPECIALIZED LOAN SERVICING SPECIFIC FACTS**

70.     Specialized Loan Servicing is wrongfully holding, or allowing others to hold, and

refuses to return $73,473.38 in funds for repairs to property of The Estate of Bonell Rashti. This has irreparably damaged The Estate of Bonell Rashti.  Further, Specialized Loan Processing has repeatedly made misrepresentations to The Estate of Bonell Rashti. Upon information and belief Specialized Loan Processing has also conspired with others to tortiously interfere with the business of The Estate of Bonell Rashti.

71.     Specialized Loan Processing's actions have also irreparably damaged The Estate of Bonell Rashti by causing The Estate of Bonell Rashti to lose business opportunities that would have allowed The Estate of Bonell Rashti to sell the real property in question at a net gain of approximately $426,110.00. Specialized Loan Processing's conduct is illegal, fraudulent, and violates numerous state and federal statutes, including but not limited to Texas Deceptive Trade Practices - Consumer Protection Act.  Specialized Loan Processing's conduct is also unconscionable.

72.     Upon information and belief Specialized Loan Processing also conspired with the flood insurer to further damage The Estate of Bonell Rashti. Upon information and belief Specialized Loan Processing also deliberately has created a technical default to generate fees and penalties or acquire the property in question at a windfall to Specialized Loan Processing and/or others that Specialized Loan Processing has conspired with.

73.     Upon information and belief Specialized Loan Processing also deliberately has interfered with The Estate of Bonell Rashti's day-to-day activities and contractual relations with third parties.

74.     Upon information and belief Specialized Loan Processing also deliberately has breached the fiduciary duty that Specialized Loan Processing owes to The Estate of Bonell Rashti.

75.     Upon information and belief Specialized Loan Processing also deliberately tortiously interfered with  contractual relations and potential contractual relations with third parties relating to The Estate of Bonell Rashti.

76.     Upon information and belief Specialized Loan Processing also deliberately tortiously interfered with The Estate of Bonell Rashti's management of the property in question.

77.     Upon information and belief Specialized Loan Processing has also committed fraud on The Estate of Bonell Rashti's concerning the property in question.

78.     There was and is no justifiable basis for Specialized Loan Processing's actions.

79.     **To date there has been no full and fair review of Specialized Loan Processing's actions that is required pursuant to the United States Constitution and the Texas Constitution and the applicable statutory and common law related thereto.**

80.     Specialized Loan Processing's actions have caused The Estate of Bonell Rashti to suffer actual out-of-pocket damages of at least $730,364.37.  Additionally, Specialized Loan Processing's actions have caused The Estate of Bonell Rashti to suffer additional damages for amounts that The Estate of Bonell Rashti will have to pay to correct the damages to The Estate of Bonell Rashti that occurred to The Estate of Bonell Rashti and were caused by Specialized Loan Processing.

81.     Specialized Loan Processing's conduct constitutes unfair and deceptive acts or practices in the business of the sale and safekeeping of mortgages and escrow monies.

82.     Specialized Loan Processing's conduct and Specialized Loan Processing's actions relative to this particular transaction violate applicable law relative to Specialized Loan Processing's fiduciary obligation that Specialized Loan Processing owed to The Estate of Bonell Rashti, that Specialized Loan Processing totally violated by Specialized Loan Processing's illegal and fraudulent activities.

83.     Specialized Loan Processing's conduct and Specialized Loan Processing's actions relative to this particular transaction violate applicable law relative to Specialized Loan Processing's fraud that Specialized Loan Processing committed.

84.     Specialized Loan Processing's conduct and Specialized Loan Processing's actions relative to this particular transaction constitute breach of contract with The Estate of Bonell

Rashti.

85.     Specialized Loan Processing's conduct and Specialized Loan Processing's actions relative to this particular transaction constitute racketeering.

86.     Specialized Loan Processing's conduct and Specialized Loan Processing's actions relative to this particular transaction violate certain statutory, regulatory and common law provisions relative to mortgages and escrowed monies.

87.     Specialized Loan Processing's conduct and Specialized Loan Processing's actions relative to this particular transaction constitute breach of fiduciary duty.

88.     Specialized Loan Processing's conduct and Specialized Loan Processing's actions relative to this particular transaction constitute negligent misrepresentations.

89.     Specialized Loan Processing's conduct and Specialized Loan Processing's actions relative to this particular transaction constitute fraudulent inducement.

90.     Specialized Loan Processing's conduct and Specialized Loan Processing's actions relative to this particular transaction constitute common-law fraudulent concealment and deceit.

91.     Specialized Loan Processing's conduct and Specialized Loan Processing's actions relative to this particular transaction constitute reckless, wanton and/or negligent supervision.

92.     Specialized Loan Processing's conduct and Specialized Loan Processing's actions relative to this particular transaction constitute breach of the common-law duty of good faith and fair dealing.

93.     Specialized Loan Processing's conduct and Specialized Loan Processing's actions relative to this particular transaction constitute breach of the  implied  duty to cooperate that is implied into contracts.

94.     Specialized Loan Processing's conduct and Specialized Loan Processing's actions relative to this particular transaction constitute fiduciary fraud.

95.     Specialized Loan Processing's conduct and Specialized Loan Processing's actions relative to this particular transaction constitute negligence.

96.     Specialized Loan Processing's conduct and Specialized Loan Processing's actions relative to this particular transaction constitute gross negligence.

97.     Specialized Loan Processing's conduct and Specialized Loan Processing's actions relative to this particular transaction constitute violations of the Texas Insurance code articles 21.20 and 21.21 sections 4 and 16, State Board of Insurance order 18663, as a *de facto* insurer.

98.     Specialized Loan Processing's conduct constitutes unfair and deceptive acts or practices in the business of insurance in violation of article 21.21 section 16 of the Texas Insurance Code, as a *de facto* insurer.

99.     Specialized Loan Processing's conduct and Specialized Loan Processing's actions relative to this particular transaction constitute an illegally collected commission pursuant to Texas insurance code article 21.07-1 et seq, as a *de facto* insurer.

100.    Specialized Loan Processing's conduct and Specialized Loan Processing's actions relative to this particular transaction constitute civil liability under section 33.002 of the Texas Civil Practices and Remedies Code which provides for damages for criminal conduct in violation of section 32.45 of the Texas Penal Code (proscribing misapplication by a fiduciary of property that has been entrusted to him) and section 162.031 of the Texas Property Code (proscribing misapplication of trust funds).

**BANK OF NEW YORK MELLON SPECIFIC FACTS**

101.    Bank of New York Mellon  is wrongfully holding, or allowing others to hold, and refuses to return $73,473.38 in funds for repairs to property of The Estate of Bonell Rashti. This has irreparably damaged The Estate of Bonell Rashti.  Further, Bank of New York Mellon has repeatedly made misrepresentations to The Estate of Bonell Rashti. Upon information and belief Bank of New York Mellon has also conspired with others to tortiously interfere with the business of The Estate of Bonell Rashti.

102.    Bank of New York Mellon's actions have also irreparably damaged The Estate of Bonell Rashti by causing The Estate of Bonell Rashti to lose business opportunities that would

have allowed The Estate of Bonell Rashti to sell the real property in question at a net gain of approximately $426,110.00. Bank of New York Mellon's conduct is illegal, fraudulent, and violates numerous state and federal statutes, including but not limited to Texas Deceptive Trade Practices - Consumer Protection Act.  Bank of New York Mellon's conduct is also unconscionable.

103.    Upon information and belief Bank of New York Mellon also conspired with the flood insurer to further damage The Estate of Bonell Rashti. Upon information and belief Bank of New York Mellon also deliberately has created a technical default to generate fees and penalties or acquire the property in question at a windfall to Bank of New York Mellon and/or others that Bank of New York Mellon has conspired with.

104.    Upon information and belief Bank of New York Mellon also deliberately has interfered with The Estate of Bonell Rashti's day-to-day activities and contractual relations with third parties.

105.    Upon information and belief Bank of New York Mellon also deliberately has breached the fiduciary duty that Bank of New York Mellon owes to The Estate of Bonell Rashti.

106.    Upon information and belief Bank of New York Mellon also deliberately tortiously interfered with  contractual relations and potential contractual relations with third parties relating to The Estate of Bonell Rashti.

107.    Upon information and belief Bank of New York Mellon also deliberately tortiously interfered with The Estate of Bonell Rashti's management of the property in question.

108.    Upon information and belief Bank of New York Mellon has also committed fraud on The Estate of Bonell Rashti's concerning the property in question.

109.    There was and is no justifiable basis for Bank of New York Mellon's actions.

110.    **To date there has been no full and fair review of Bank of New York Mellon's actions that is required pursuant to the United States Constitution and the Texas Constitution and the applicable statutory and common law related thereto.**

111.    Bank of New York Mellon's actions have caused The Estate of Bonell Rashti to suffer actual out-of-pocket damages of at least $730,364.37.  Additionally, Bank of New York Mellon's actions have caused The Estate of Bonell Rashti to suffer additional damages for amounts that The Estate of Bonell Rashti will have to pay to correct the damages to The Estate of Bonell Rashti that occurred to The Estate of Bonell Rashti and were caused by Bank of New York Mellon.

112.    Bank of New York Mellon's conduct constitutes unfair and deceptive acts or practices in the business of the sale and safekeeping of mortgages and escrow monies.

113.    Bank of New York Mellon's conduct and Bank of New York Mellon's actions relative to this particular transaction violate applicable law relative to Bank of New York Mellon's fiduciary obligation that Bank of New York Mellon owed to The Estate of Bonell Rashti, that Bank of New York Mellon totally violated by Bank of New York Mellon's illegal and fraudulent activities.

114.    Bank of New York Mellon's conduct and Bank of New York Mellon's actions relative to this particular transaction violate applicable law relative to Bank of New York Mellon's fraud that Bank of New York Mellon committed.

115.    Bank of New York Mellon's conduct and Bank of New York Mellon's actions relative to this particular transaction constitute breach of contract with The Estate of Bonell Rashti.

116.    Bank of New York Mellon's conduct and Bank of New York Mellon's actions relative to this particular transaction constitute racketeering.

117.    Bank of New York Mellon's conduct and Bank of New York Mellon's actions relative to this particular transaction violate certain statutory, regulatory and common law provisions relative to mortgages and escrowed monies.

118.    Bank of New York Mellon's conduct and Bank of New York Mellon's actions relative to this particular transaction constitute breach of fiduciary duty.

119.     Bank of New York Mellon's conduct and Bank of New York Mellon's actions relative to this particular transaction constitute negligent misrepresentations.

120.     Bank of New York Mellon's conduct and Bank of New York Mellon's actions relative to this particular transaction constitute fraudulent inducement.

121.     Bank of New York Mellon's conduct and Bank of New York Mellon's actions relative to this particular transaction constitute common-law fraudulent concealment and deceit.

122.     Bank of New York Mellon's conduct and Bank of New York Mellon's actions relative to this particular transaction constitute reckless, wanton and/or negligent supervision.

123.     Bank of New York Mellon's conduct and Bank of New York Mellon's actions relative to this particular transaction constitute breach of the common-law duty of good faith and fair dealing.

124.     Bank of New York Mellon's conduct and Bank of New York Mellon's actions relative to this particular transaction constitute breach of the  implied  duty to cooperate that is implied into contracts.

125.     Bank of New York Mellon's conduct and Bank of New York Mellon's actions relative to this particular transaction constitute fiduciary fraud.

126.     Bank of New York Mellon's conduct and Bank of New York Mellon's actions relative to this particular transaction constitute negligence.

127.     Bank of New York Mellon's conduct and Bank of New York Mellon's actions relative to this particular transaction constitute gross negligence.

128.     Bank of New York Mellon's conduct and Bank of New York Mellon's actions relative to this particular transaction constitute violations of the Texas Insurance code articles 21.20 and 21.21 sections 4 and 16, State Board of Insurance order 18663, as a *de facto* insurer.

129.     Bank of New York Mellon's conduct constitutes unfair and deceptive acts or practices in the business of insurance in violation of article 21.21 section 16 of the Texas Insurance Code, as a *de facto* insurer.

130.    Bank of New York Mellon's conduct and Bank of New York Mellon's actions relative to this particular transaction constitute an illegally collected commission pursuant to Texas Insurance Code article 21.07-1 et seq, as a *de facto* insurer.

131.    Bank of New York Mellon's conduct and Bank of New York Mellon's actions relative to this particular transaction constitute civil liability under section 33.002 of the Texas Civil Practices and Remedies Code which provides for damages for criminal conduct in violation of section 32.45 of the Texas Penal Code (proscribing misapplication by a fiduciary of property that has been entrusted to him) and section 162.031 of the Texas Property Code (proscribing misapplication of trust funds).

## VI.    FIRST CAUSE OF ACTION: BREACH OF CONTRACT

132.    Plaintiff realleges all of the allegations set forth in Sections 1- 131  herein as if fully copied and set forth at length.  Defendants' failure to honor the contracts in question caused Plaintiff substantial damages. Defendants breached the contracts with Plaintiff by pay insurance benefits under the two Policies in question and by failing to turn over and wrongfully holding and refusing to return $73,473.38 in funds for repairs to property of The Estate of Bonell Rashti.

133.    Defendants' breaches have resulted in damages to Plaintiff for which it sues.

## VII.    SECOND CAUSE OF ACTION: DTPA

134.    Plaintiff realleges all of the allegations set forth in Sections 1- 133 herein as if fully copied and set forth at length.

135.    Plaintiff is a consumer entitled to bring this action for relief under the Texas Deceptive trade Practices-Consumer Protection ACT (the "DTPA") the actions of Defendants outlined above constitute misrepresentations, breaches of contracts and unconscionable conduct, actionable under the DTPA.

136.    Specifically, Defendant Bank of America  committed the following acts in violation of the DTPA "laundry list," one or more of which was a producing cause of damages to Plaintiff:

A.     False, misleading and deceptive acts in violation of § 17.46(b)(5) of the Texas Deceptive Trade Practices - Consumer Protection Act.

B.     Representing that products and/or services have sponsorship, approval, characteristics, ingredients, uses, benefits, or quantities which they do not have or that a person has a sponsorship, approval, status, affiliation, or connection which he does not in violation of § 17.46(b)(7) of the Texas Deceptive Trade Practices - Consumer Protection Act.

C.     Representing that an agreement confers or involves rights, remedies, or obligations which it does not have or involved, or which are prohibited by law in violation of § 17.46(b)(12) of the Texas Deceptive Trade Practices - Consumer Protection Act.

D.     Representing that products and/or services have been performed when the products and/or services were not performed in violation of § 17.46(b)(21) of the Texas Deceptive Trade Practices - Consumer Protection Act.

E.     Failing to disclose information concerning the products and/or services which was known at the time of the transaction if such failure to disclose such information was intended to induce the consumer and the transaction under which the consumer would not have entered and information been disclosed in violation of § 17.46(b)(23) of the Texas Deceptive Trade Practices - Consumer Protection Act.

F.     Committing an unconscionable action in violation of § 17.50(a)(3) of the Texas Deceptive Trade Practices - Consumer Protection Act.

G.     Unfair and deceptive acts or practices in the business of insurance in violation of Article 21.21 Section 16 of the Texas Insurance Code, as a de facto insurer.

H.     Misrepresenting the identity of the insured and/or the insurer.

137.   Specifically, Defendant Specialized Loan Servicing committed the following acts in violation of the DTPA "laundry list," one or more of which was a producing cause of damages to Plaintiff:

A.     False, misleading and deceptive acts in violation of § 17.46(b)(5) of the Texas Deceptive Trade Practices - Consumer Protection Act.

B.     Representing that products and/or services have sponsorship, approval, characteristics, ingredients, uses, benefits, or quantities which they do not have or that a person has a sponsorship, approval, status, affiliation, or connection which he does not in violation of § 17.46(b)(7) of the Texas Deceptive Trade Practices - Consumer Protection Act.

C.     Representing that an agreement confers or involves rights, remedies, or obligations which it does not have or involved, or which are prohibited by law in violation of § 17.46(b)(12) of the Texas Deceptive Trade Practices - Consumer Protection Act.

D.     Representing that products and/or services have been performed when the products and/or services were not performed in violation of § 17.46(b)(21) of the Texas Deceptive Trade Practices - Consumer Protection Act.

E.     Failing to disclose information concerning the products and/or services which was known at the time of the transaction if such failure to disclose such information was intended to induce the consumer and the transaction under which the consumer would not have entered and information been disclosed in violation of § 17.46(b)(23) of the Texas Deceptive Trade Practices - Consumer Protection Act.

F.     Committing an unconscionable action in violation of § 17.50(a)(3) of the Texas Deceptive Trade Practices - Consumer Protection Act.

G.     Unfair and deceptive acts or practices in the business of insurance in violation of Article 21.21 Section 16 of the Texas Insurance Code, as a de facto insurer.

H.     Misrepresenting the identity of the insured and/or the insurer.

138.   Specifically, Defendant Bank of New York Mellon committed the following acts in violation of the DTPA "laundry list," one or more of which was a producing cause of damages to Plaintiff:

A.    False, misleading and deceptive acts in violation of § 17.46(b)(5) of the Texas Deceptive Trade Practices - Consumer Protection Act.

B.    Representing that products and/or services have sponsorship, approval, characteristics, ingredients, uses, benefits, or quantities which they do not have or that a person has a sponsorship, approval, status, affiliation, or connection which he does not in violation of § 17.46(b)(7) of the Texas Deceptive Trade Practices - Consumer Protection Act.

C.    Representing that an agreement confers or involves rights, remedies, or obligations which it does not have or involved, or which are prohibited by law in violation of § 17.46(b)(12) of the Texas Deceptive Trade Practices - Consumer Protection Act.

D.    Representing that products and/or services have been performed when the products and/or services were not performed in violation of § 17.46(b)(21) of the Texas Deceptive Trade Practices - Consumer Protection Act.

E.    Failing to disclose information concerning the products and/or services which was known at the time of the transaction if such failure to disclose such information was intended to induce the consumer and the transaction under which the consumer would not have entered and information been disclosed in violation of § 17.46(b)(23) of the Texas Deceptive Trade Practices - Consumer Protection Act.

F.    Committing an unconscionable action in violation of § 17.50(a)(3) of the Texas Deceptive Trade Practices - Consumer Protection Act.

G.    Unfair and deceptive acts or practices in the business of insurance in violation of Article 21.21 Section 16 of the Texas Insurance Code, as a de facto insurer.

H.    Misrepresenting the identity of the insured and/or the insurer.

139.    Specifically, Defendant QBE Americas, Inc. committed the following acts in violation of the DTPA "laundry list," one or more of which was a producing cause of damages to Plaintiff:

A. False, misleading and deceptive acts in violation of § 17.46(b)(5) of the Texas Deceptive Trade Practices - Consumer Protection Act.

B. Representing that products and/or services have sponsorship, approval, characteristics, ingredients, uses, benefits, or quantities which they do not have or that a person has a sponsorship, approval, status, affiliation, or connection which he does not in violation of § 17.46(b)(7) of the Texas Deceptive Trade Practices - Consumer Protection Act.

C. Representing that an agreement confers or involves rights, remedies, or obligations which it does not have or involved, or which are prohibited by law in violation of § 17.46(b)(12) of the Texas Deceptive Trade Practices - Consumer Protection Act.

D. Representing that products and/or services have been performed when the products and/or services were not performed in violation of § 17.46(b)(21) of the Texas Deceptive Trade Practices - Consumer Protection Act.

E. Failing to disclose information concerning the products and/or services which was known at the time of the transaction if such failure to disclose such information was intended to induce the consumer and the transaction under which the consumer would not have entered and information been disclosed in violation of § 17.46(b)(23) of the Texas Deceptive Trade Practices - Consumer Protection Act.

F. Committing an unconscionable action in violation of § 17.50(a)(3) of the Texas Deceptive Trade Practices - Consumer Protection Act.

G. Unfair and deceptive acts or practices in the business of insurance in violation of Article 21.21 Section 16 of the Texas Insurance Code, as a de facto insurer.

H. Misrepresenting the identity of the insured and/or the insurer.

140. Specifically, Defendant BRIT Insurance committed the following acts in violation of the DTPA "laundry list," one or more of which was a producing cause of damages to Plaintiff:

A. False, misleading and deceptive acts in violation of § 17.46(b)(5) of the Texas

Deceptive Trade Practices - Consumer Protection Act.

B.     Representing that products and/or services have sponsorship, approval, characteristics, ingredients, uses, benefits, or quantities which they do not have or that a person has a sponsorship, approval, status, affiliation, or connection which he does not in violation of § 17.46(b)(7) of the Texas Deceptive Trade Practices - Consumer Protection Act.

C.     Representing that an agreement confers or involves rights, remedies, or obligations which it does not have or involved, or which are prohibited by law in violation of § 17.46(b)(12) of the Texas Deceptive Trade Practices - Consumer Protection Act.

D.     Representing that products and/or services have been performed when the products and/or services were not performed in violation of § 17.46(b)(21) of the Texas Deceptive Trade Practices - Consumer Protection Act.

E.     Failing to disclose information concerning the products and/or services which was known at the time of the transaction if such failure to disclose such information was intended to induce the consumer and the transaction under which the consumer would not have entered and information been disclosed in violation of § 17.46(b)(23) of the Texas Deceptive Trade Practices - Consumer Protection Act.

F.     Committing an unconscionable action in violation of § 17.50(a)(3) of the Texas Deceptive Trade Practices - Consumer Protection Act.

G.     Unfair and deceptive acts or practices in the business of insurance in violation of Article 21.21 Section 16 of the Texas Insurance Code, as a de facto insurer.

H.     Misrepresenting the identity of the insured and/or the insurer.

141.     Specifically, Defendant Certain Underwriters at Lloyds,  London and Great Lakes Reinsurance (UK) PLC committed the following acts in violation of the DTPA "laundry list," one or more of which was a producing cause of damages to Plaintiff:

A.     False, misleading and deceptive acts in violation of § 17.46(b)(5) of the Texas

Deceptive Trade Practices - Consumer Protection Act.

B.      Representing that products and/or services have sponsorship, approval, characteristics, ingredients, uses, benefits, or quantities which they do not have or that a person has a sponsorship, approval, status, affiliation, or connection which he does not in violation of § 17.46(b)(7) of the Texas Deceptive Trade Practices - Consumer Protection Act.

C.      Representing that an agreement confers or involves rights, remedies, or obligations which it does not have or involved, or which are prohibited by law in violation of § 17.46(b)(12) of the Texas Deceptive Trade Practices - Consumer Protection Act.

D.      Representing that products and/or services have been performed when the products and/or services were not performed in violation of § 17.46(b)(21) of the Texas Deceptive Trade Practices - Consumer Protection Act.

E.      Failing to disclose information concerning the products and/or services which was known at the time of the transaction if such failure to disclose such information was intended to induce the consumer and the transaction under which the consumer would not have entered and information been disclosed in violation of § 17.46(b)(23) of the Texas Deceptive Trade Practices - Consumer Protection Act.

F.      Committing an unconscionable action in violation of § 17.50(a)(3) of the Texas Deceptive Trade Practices - Consumer Protection Act.

G.      Unfair and deceptive acts or practices in the business of insurance in violation of Article 21.21 Section 16 of the Texas Insurance Code, as a de facto insurer.

H.      Misrepresenting the identity of the insured and/or the insurer.

142.      Plaintiff relied on these representations to it's detriment.

143.      Further, Defendant violated the DTPA by engaging in unconscionable conduct and/or an unconscionable course of conduct. For this reason, this transaction was unconscionable and is actionable under DTPA §17.50(a)(3).

144.    Defendants' conduct as described herein was a producing cause of damages to Plaintiff.  Further, Defendants' conduct was committed knowingly, entitling Plaintiff to seek the trebling of its actual damages in accordance with the DTPA.

## VIII.   THIRD CAUSE OF ACTION:  PUNITIVE DAMAGES

145.  Plaintiff realleges all of the allegations set forth in paragraphs 1-144 herein as if fully copied and set forth at length.  Additionally, Defendants  actions and conduct constitute the type of action that is so outrageous that it should be compensated for by additionally awarding punitive and/or exemplary damages.  Plaintiff hereby sues for punitive and/or exemplary damages from Defendants  in the amount of the excess of the jurisdictional minimum of this Court, in an amount of at least $2,100,000.00.

## IX.    DAMAGES

146.    Plaintiff realleges all of the allegations set forth in paragraphs 1-145 herein as if fully copied and set forth at length. Defendants' acts and omissions as described herein have been a producing and/or proximate cause of damages to Plaintiff. Plaintiff has suffered economic damages, including but not limited to:

A.    $73,473.38 in funds for repairs to property of The Estate of Bonell Rashti (originally payable to Plaintiff)  that Bank of America and/or Specialized Loan Servicing and/or Bank of New York Mellon refuse to release; and,

B.    approximately $426,110.00 in damages for lost business opportunities that caused The Estate of Bonell Rashti to lose business opportunities that would have allowed The Estate of Bonell Rashti to sell the real property in question at a net gain of approximately $426,110.00  if the $73,473.38 in funds for repairs to property of The Estate of Bonell Rashti would not have been wrongfully held by Bank of America and/or Specialized Loan Servicing and/or Bank of New York Mellon; and,

C.    Additional consequential damages due to the actions of  Bank of America

and/or Specialized Loan Servicing and/or Bank of New York Mellon.

D.      Additional actual damages due to the actions of Bank of America and/or

Specialized Loan Servicing and/or Bank of New York Mellon.

E.      $77,707.95 in insurance proceeds that were not paid by QBE Americas, Inc.

and/or BRIT Insurance and/or Certain Underwriters at Lloyds, London

and Great Lakes Reinsurance (UK) PLC.

F.      Approximately $426,110.00 in damages for lost business opportunities that

caused The Estate of Bonell Rashti to lose business opportunities that

would have allowed The Estate of Bonell Rashti to sell the real property in

question at a net gain of approximately $426,110.00 if the $77,707.95 in

insurance proceeds that were not paid by QBE Americas, Inc. and/or BRIT

Insurance and/or Certain Underwriters at Lloyds, London and Great Lakes

Reinsurance (UK) PLC. would not have been wrongfully withheld by QBE

Americas, Inc. and/or BRIT Insurance and/or Certain Underwriters at

Lloyds, London and Great Lakes Reinsurance (UK) PLC; and,

G.      Additional actual damages due to the actions of QBE Americas, Inc. and/or

BRIT Insurance and/or Certain Underwriters at Lloyds, London and Great

Lakes Reinsurance (UK) PLC.

H.      Additional consequential damages due to the actions of QBE Americas,

Inc. and/or BRIT Insurance and/or Certain Underwriters at Lloyds,

London and Great Lakes Reinsurance (UK) PLC.

147.    These damages are within the jurisdictional limits of this Court.

## X.      ADDITIONAL DAMAGES AND PUNITIVE DAMAGES

148.    Plaintiff realleges all of the allegations set forth in paragraphs 1-147 herein as if

fully copied and set forth at length. Defendants' conduct in violation of the DTPA was committed

knowingly, as that term is defined. Accordingly, Plaintiff seeks an award of additional damages

under the DTPA in an amount not to exceed three times the amount of its economic damages.

## XI.    KNOWING AND INTENTIONAL CONDUCT.

149.    Plaintiff realleges all of the allegations set forth in paragraphs 1-148 herein as if fully copied and set forth at length. Defendants had an actual awareness of the falsity, deception, or unfairness of the acts and practices alleged in this petition. Additionally, Defendants had the specific intent that Plaintiff act in detrimental reliance on the falsity and deception or in detrimental ignorance of the unfairness.

## XII.    ADDITIONAL STATUTORY DAMAGES: EXEMPLARY DAMAGES.

150.    Plaintiff realleges all of the allegations set forth in paragraphs 1-149 herein as if fully copied and set forth at length. Plaintiff reserves the right to amend Plaintiff's pleadings to seek statutory damages and/or exemplary damages once discovery is conducted if the information discovered so warrants.

## XIII.    ATTORNEY'S FEES

151.    Plaintiff realleges all of the allegations set forth in paragraphs 1-150 herein as if fully copied and set forth at length. As a result of Defendants' conduct, Plaintiff has been required to obtain the services of the undersigned attorney for the filing, prosecution and trial of this cause, and therefore seeks an award of reasonable and necessary attorney's fees pursuant to applicable law.

## XIV.    FOURTH CAUSE OF ACTION:  FRAUD BY BANK OF AMERICA AND SPECIALIZED LOAN SERVICING AND BANK OF NEW YORK MELLON

152.    Plaintiff realleges all of the allegations set forth in paragraphs 1-151 herein as if fully copied and set forth at length. In *Stone v. Lawyers Title Insurance Corporation*, 554 S.W.2d 183 (Tex. 1977), the Texas Supreme Court listed the following actionable fraud elements:  (1) that a material representation was made;  (2)  that it was false;  (3)  that when the speaker made it he knew it was false or made it recklessly without any knowledge of the truth and as a positive assertion;  (4) that he made it with the intention that it should be acted upon by the party;  (5) that the party acted in reliance upon it;  (6) that he thereby suffered injury. Here, (1) the material

representations made by Bank of America and Specialized Loan Servicing and Bank of New York

Mellon represented that the insurance flood proceeds would be released to The Estate of Bonell

Rashti and that Bank of America and Specialized Loan Servicing and Bank of New York Mellon

would cooperate and act in good faith with  The Estate of Bonell Rashti and that Bank of America

and Specialized Loan Servicing and Bank of New York Mellon would take appropriate action to

be sure the flood insurers timely and completely paid insurance proceed and that The Estate of

Bonell Rashti was the insured under the flood insurance policies in question; (2) as clearly argued

by Bank of America and Specialized Loan Servicing and Bank of New York Mellon in their

defense, they now claim those  representations were false; (3) those statements were either false or

made recklessly, (4) it was Bank of America and Specialized Loan Servicing and Bank of New

York Mellon's  intent that Plaintiff rely on their statements in order to threaten foreclosure and

wrongfully take insurance proceeds of Estate of Bonell Rashti on the property in question; (5) the

Plaintiff did in fact turn over insurance proceeds on the  property in question because of those

affirmative statements; and, (6) Plaintiff has suffered injury by Bank of America and Specialized

Loan Servicing and Bank of New York Mellon's material misrepresentations.  All of Plaintiff's

damages flowed out of the fraud of  Bank of America and Specialized Loan Servicing and Bank

of New York Mellon's material misrepresentations and in prior and subsequent fraudulent oral

and written misrepresentations by Bank of America and Specialized Loan Servicing and Bank of

New York Mellon.

**XV.   FIFTH CAUSE OF ACTION:  FRAUD BY  QBE AMERICAS, INC. AND/OR BRIT INSURANCE AND/OR CERTAIN UNDERWRITERS AT LLOYDS, LONDON AND GREAT LAKES REINSURANCE (UK) PLC**

153.    Plaintiff realleges all of the allegations set forth in paragraphs 1-152 herein as if

fully copied and set forth at length. In *Stone v. Lawyers Title Insurance Corporation*, 554 S.W.2d

183 (Tex. 1977), the Texas Supreme Court listed the following actionable fraud elements:  (1) that

a material representation was made;  (2)  that it was false;  (3) that when the speaker made it he

knew it was false or made it recklessly without any knowledge of the truth and as a positive

assertion;  (4) that he made it with the intention that it should be acted upon by the party;  (5) that the party acted in reliance upon it;  (6) that he thereby suffered injury. Here, (1) the material representations made by  QBE Americas, Inc. and/or  BRIT Insurance and/or Certain Underwriters at Lloyds,  London and Great Lakes Reinsurance (UK) PLC  represented that the insurance flood proceeds would be released to The Estate of Bonell Rashti and that  QBE Americas, Inc. and/or  BRIT Insurance and/or Certain Underwriters at Lloyds,  London and Great Lakes Reinsurance (UK) PLC would cooperate and act in good faith with  The Estate of Bonell Rashti and that  QBE Americas, Inc. and/or  BRIT Insurance and/or Certain Underwriters at Lloyds,  London and Great Lakes Reinsurance (UK) PLC  would take appropriate action to be sure the flood insurance claims were timely and completely paid and that The Estate of Bonell Rashti was the insured under the flood insurance policies in question; (2) as clearly argued by QBE Americas, Inc. and/or  BRIT Insurance and/or Certain Underwriters at Lloyds,  London and Great Lakes Reinsurance (UK) PLC in their defense, they now claim those  representations were false; (3) those statements were either false or made recklessly, (4) it was QBE Americas, Inc. and/or  BRIT Insurance and/or Certain Underwriters at Lloyds,  London and Great Lakes Reinsurance (UK) PLC's  intent that Plaintiff rely on their statements in order to have others threaten foreclosure and wrongfully cause to be taken insurance proceeds of Estate of Bonell Rashti on the property in question and QBE Americas, Inc. and/or  BRIT Insurance and/or Certain Underwriters at Lloyds,  London and Great Lakes Reinsurance (UK) PLC fail to pay all proper additional insurance proceeds to The Estate of Bonell Rashti; (5) the Plaintiff did in fact turn over some of the insurance proceeds on the  property in question because of those affirmative statements and the insured was repeatedly misnamed by QBE Americas, Inc. and/or  BRIT Insurance and/or Certain Underwriters at Lloyds,  London and Great Lakes Reinsurance (UK) PLC; and, (6) Plaintiff has suffered injury by QBE Americas, Inc. and/or  BRIT Insurance and/or Certain Underwriters at Lloyds,  London and Great Lakes Reinsurance (UK) PLC's material misrepresentations.  All of Plaintiff's damages flowed out of the fraud of  QBE Americas, Inc.

and/or  BRIT Insurance and/or Certain Underwriters at Lloyds,  London and Great Lakes Reinsurance (UK) PLC's material misrepresentations and in prior and subsequent fraudulent oral and written misrepresentations by QBE Americas, Inc. and/or  BRIT Insurance and/or Certain Underwriters at Lloyds,  London and Great Lakes Reinsurance (UK) PLC.

## XVI.   SIXTH  CAUSE OF ACTION: GROSSLY NEGLIGENT MISREPRESENTATION BY BANK OF AMERICA AND SPECIALIZED LOAN SERVICING AND BANK OF NEW YORK MELLON

154.    Plaintiff realleges all of the allegations set forth in paragraphs 1-153 herein as if fully copied and set forth at length.   Plaintiff  further alleges that the actions of Bank of America and Specialized Loan Servicing and Bank of New York Mellon constituted grossly negligent misrepresentations because there were grossly false representations of existing facts and Plaintiff was damaged by these representations. In particular, Bank of America and Specialized Loan Servicing and Bank of New York Mellon willfully and intentionally represented that the insurance flood proceeds would be released to The Estate of Bonell Rashti and that Bank of America and Specialized Loan Servicing and Bank of New York Mellon would cooperate and act in good faith with  The Estate of Bonell Rashti and that Bank of America and Specialized Loan Servicing and Bank of New York Mellon would take appropriate action to be sure the flood insurers timely and completely paid insurance proceed and that The Estate of Bonell Rashti was the insured under the flood insurance policies in question.   Further, since Bank of America and Specialized Loan Servicing and Bank of New York Mellon were actuated by malicious motives or shared the illegal motives of Defendants and/or as of yet unknown parties, Bank of America and Specialized Loan Servicing and Bank of New York Mellon are each jointly and severally liable for the damages suffered by Plaintiff  as a result of Bank of America and Specialized Loan Servicing and Bank of New York Mellon's  actions as further detailed in this Plaintiff's Original Petition. Bank of America and Specialized Loan Servicing and Bank of New York Mellon did not have the legal right to do the acts complained of in this Plaintiff's Original Petition. All of Plaintiff's damages flowed out of the fraud and grossly negligent misrepresentations of Bank of America and

Specialized Loan Servicing and Bank of New York Mellon in misrepresentations and in prior and subsequent fraudulent oral and written  representations by Bank of America and Specialized Loan Servicing and Bank of New York Mellon.

## XVII.  SEVENTH  CAUSE OF ACTION: NEGLIGENT MISREPRESENTATION BY BANK OF AMERICA AND SPECIALIZED LOAN SERVICING AND BANK OF NEW YORK MELLON

155.    Plaintiff realleges all of the allegations set forth in paragraphs 1-154 herein as if fully copied and set forth at length.   Plaintiff  further alleges that the actions of  Bank of America and Specialized Loan Servicing and Bank of New York Mellon constituted negligent misrepresentations because there were false representations of existing facts and Plaintiff was damaged by these representations. In particular, Bank of America and Specialized Loan Servicing and Bank of New York Mellon willfully and intentionally represented that the insurance flood proceeds would be released to The Estate of Bonell Rashti and that Bank of America and Specialized Loan Servicing and Bank of New York Mellon would cooperate and act in good faith with  The Estate of Bonell Rashti and that Bank of America and Specialized Loan Servicing and Bank of New York Mellon would take appropriate action to be sure the flood insurers timely and completely paid insurance proceed and that The Estate of Bonell Rashti was the insured under the flood insurance policies in question.   Further, since  Bank of America and Specialized Loan Servicing and Bank of New York Mellon were actuated by malicious motives or shared the illegal motives of Defendants and/or as of yet unknown parties,  Bank of America and Specialized Loan Servicing and Bank of New York Mellon  are each jointly and severally liable for the damages suffered by Plaintiff  as a result of  Bank of America and Specialized Loan Servicing and Bank of New York Mellon's actions as further detailed in this Plaintiff's Original Petition.  Bank of America and Specialized Loan Servicing and Bank of New York Mellon did not have the legal right to do the acts complained of in this Plaintiff's Original Petition. All of Plaintiff's damages flowed out of the fraud and negligent misrepresentations of Bank of America and Specialized Loan Servicing and Bank of New York Mellon in misrepresentations and in prior and subsequent

fraudulent oral and written  representations by Bank of America and Specialized Loan Servicing and Bank of New York Mellon.

**XVIII.      EIGHTH  CAUSE OF ACTION:  EXEMPLARY DAMAGES AGAINST BANK OF AMERICA AND SPECIALIZED LOAN SERVICING AND BANK OF NEW YORK MELLON**

156.    Plaintiff realleges all of the allegations set forth in paragraphs 1-155 herein as if fully copied and set forth at length.   Plaintiff  further alleges that by reason of the fact that Bank of America and Specialized Loan Servicing and Bank of New York Mellon knew that the representations described above were false at the time they were made and the  actions were unlawful, the representations were willful and malicious and constitute conduct for which the law allows the imposition of exemplary damages. In particular, Bank of America and Specialized Loan Servicing and Bank of New York Mellon willfully and intentionally  represented that the insurance flood proceeds would be released to The Estate of Bonell Rashti and that Bank of America and Specialized Loan Servicing and Bank of New York Mellon would cooperate and act in good faith with  The Estate of Bonell Rashti and that Bank of America and Specialized Loan Servicing and Bank of New York Mellon would take appropriate action to be sure the flood insurers timely and completely paid insurance proceed and that The Estate of Bonell Rashti was the insured under the flood insurance policies in question. In this connection, Plaintiff  will show that Plaintiff has incurred significant expenses, including attorney's fees and other damages, in the investigation and prosecution of this action. Accordingly, Plaintiff requests that exemplary damages be awarded against Bank of America and Specialized Loan Servicing and Bank of New York Mellon  in a sum which exceeds the minimum jurisdictional limits of the Court, for which additional amount of $2,100,000.00  Plaintiff  hereby sues.

**XIX.   NINTH  CAUSE OF ACTION: GROSSLY NEGLIGENT MISREPRESENTATION BY QBE AMERICAS, INC. AND/OR  BRIT INSURANCE AND/OR CERTAIN UNDERWRITERS AT LLOYDS,  LONDON AND GREAT LAKES REINSURANCE (UK) PLC**

157.    Plaintiff realleges all of the allegations set forth in paragraphs 1-156 herein as if fully copied and set forth at length.   Plaintiff  further alleges that the actions of QBE Americas,

36

Inc. and/or  BRIT Insurance and/or Certain Underwriters at Lloyds,  London and Great Lakes

Reinsurance (UK) PLC constituted grossly negligent misrepresentations because there were

grossly false representations of existing facts and Plaintiff was damaged by these representations.

In particular, QBE Americas, Inc. and/or  BRIT Insurance and/or Certain Underwriters at Lloyds,

London and Great Lakes Reinsurance (UK) PLC willfully and intentionally represented that the

insurance flood proceeds would be released to The Estate of Bonell Rashti and that  QBE

Americas, Inc. and/or  BRIT Insurance and/or Certain Underwriters at Lloyds,  London and Great

Lakes Reinsurance (UK) PLC would cooperate and act in good faith with  The Estate of Bonell

Rashti and that  QBE Americas, Inc. and/or  BRIT Insurance and/or Certain Underwriters at

Lloyds,  London and Great Lakes Reinsurance (UK) PLC  would take appropriate action to be

sure the flood insurance claims were timely and completely paid and that The Estate of Bonell

Rashti was the insured under the flood insurance policies in question.  Further, since QBE

Americas, Inc. and/or  BRIT Insurance and/or Certain Underwriters at Lloyds,  London and Great

Lakes Reinsurance (UK) PLC were actuated by malicious motives or shared the illegal motives of

Defendants and/or as of yet unknown parties, QBE Americas, Inc. and/or  BRIT Insurance and/or

Certain Underwriters at Lloyds,  London and Great Lakes Reinsurance (UK) PLC are each jointly

and severally liable for the damages suffered by Plaintiff  as a result of QBE Americas, Inc. and/or

BRIT Insurance and/or Certain Underwriters at Lloyds,  London and Great Lakes Reinsurance

(UK) PLC's  actions as further detailed in this Plaintiff's Original Petition. QBE Americas, Inc.

and/or  BRIT Insurance and/or Certain Underwriters at Lloyds,  London and Great Lakes

Reinsurance (UK) PLC did not have the legal right to do the acts complained of in this Plaintiff's

Original Petition. All of Plaintiff's damages flowed out of the fraud and grossly negligent

misrepresentations of QBE Americas, Inc. and/or  BRIT Insurance and/or Certain Underwriters at

Lloyds,  London and Great Lakes Reinsurance (UK) PLC in misrepresentations and in prior and

subsequent fraudulent oral and written  representations by QBE Americas, Inc. and/or  BRIT

Insurance and/or Certain Underwriters at Lloyds,  London and Great Lakes Reinsurance (UK)

PLC.

**XX.   TENTH  CAUSE OF ACTION: NEGLIGENT MISREPRESENTATION BY  QBE AMERICAS, INC. AND/OR  BRIT INSURANCE AND/OR CERTAIN UNDERWRITERS AT LLOYDS,  LONDON AND GREAT LAKES REINSURANCE (UK) PLC**

158.   Plaintiff realleges all of the allegations set forth in paragraphs 1-157 herein as if fully copied and set forth at length.   Plaintiff  further alleges that the actions of   QBE Americas, Inc. and/or  BRIT Insurance and/or Certain Underwriters at Lloyds,  London and Great Lakes Reinsurance (UK) PLC constituted negligent misrepresentations because there were false representations of existing facts and Plaintiff was damaged by these representations. In particular, QBE Americas, Inc. and/or  BRIT Insurance and/or Certain Underwriters at Lloyds,  London and Great Lakes Reinsurance (UK) PLC willfully and intentionally represented that the insurance flood proceeds would be released to The Estate of Bonell Rashti and that  QBE Americas, Inc. and/or  BRIT Insurance and/or Certain Underwriters at Lloyds,  London and Great Lakes Reinsurance (UK) PLC would cooperate and act in good faith with  The Estate of Bonell Rashti and that  QBE Americas, Inc. and/or  BRIT Insurance and/or Certain Underwriters at Lloyds, London and Great Lakes Reinsurance (UK) PLC  would take appropriate action to be sure the flood insurance claims were timely and completely paid and that The Estate of Bonell Rashti was the insured under the flood insurance policies in question.  Further, since   QBE Americas, Inc. and/or  BRIT Insurance and/or Certain Underwriters at Lloyds,  London and Great Lakes Reinsurance (UK) PLC were actuated by malicious motives or shared the illegal motives of Defendants and/or as of yet unknown parties,   QBE Americas, Inc. and/or  BRIT Insurance and/or Certain Underwriters at Lloyds,  London and Great Lakes Reinsurance (UK) PLC  are each jointly and severally liable for the damages suffered by Plaintiff  as a result of   QBE Americas, Inc. and/or  BRIT Insurance and/or Certain Underwriters at Lloyds,  London and Great Lakes Reinsurance (UK) PLC's actions as further detailed in this Plaintiff's Original Petition.   QBE Americas, Inc. and/or  BRIT Insurance and/or Certain Underwriters at Lloyds,  London and Great Lakes Reinsurance (UK) PLC did not have the legal right to do the acts complained of in this

Plaintiff's Original Petition. All of Plaintiff's damages flowed out of the fraud and negligent

misrepresentations of QBE Americas, Inc. and/or BRIT Insurance and/or Certain Underwriters at

Lloyds, London and Great Lakes Reinsurance (UK) PLC in misrepresentations and in prior and

subsequent fraudulent oral and written representations by QBE Americas, Inc. and/or BRIT

Insurance and/or Certain Underwriters at Lloyds, London and Great Lakes Reinsurance (UK)

PLC .

**XXI.   ELEVENTH CAUSE OF ACTION: EXEMPLARY DAMAGES AGAINST QBE AMERICAS, INC. AND/OR BRIT INSURANCE AND/OR CERTAIN UNDERWRITERS AT LLOYDS, LONDON AND GREAT LAKES REINSURANCE (UK) PLC**

159.    Plaintiff realleges all of the allegations set forth in paragraphs 1-158 herein as if

fully copied and set forth at length.   Plaintiff further alleges that by reason of the fact that QBE

Americas, Inc. and/or BRIT Insurance and/or Certain Underwriters at Lloyds, London and Great

Lakes Reinsurance (UK) PLC knew that the representations described above were false at the time

they were made and the actions were unlawful, the representations were willful and malicious

and constitute conduct for which the law allows the imposition of exemplary damages. In

particular, QBE Americas, Inc. and/or BRIT Insurance and/or Certain Underwriters at Lloyds,

London and Great Lakes Reinsurance (UK) PLC willfully and intentionally represented that the

insurance flood proceeds would be released to The Estate of Bonell Rashti and that QBE

Americas, Inc. and/or BRIT Insurance and/or Certain Underwriters at Lloyds, London and Great

Lakes Reinsurance (UK) PLC would cooperate and act in good faith with The Estate of Bonell

Rashti and that QBE Americas, Inc. and/or BRIT Insurance and/or Certain Underwriters at

Lloyds, London and Great Lakes Reinsurance (UK) PLC would take appropriate action to be

sure the flood insurance claims were timely and completely paid and that The Estate of Bonell

Rashti was the insured under the flood insurance policies in question. In this connection, Plaintiff

will show that Plaintiff has incurred significant expenses, including attorney's fees and other

damages, in the investigation and prosecution of this action. Accordingly, Plaintiff requests that

exemplary damages be awarded against QBE Americas, Inc. and/or BRIT Insurance and/or

Certain Underwriters at Lloyds,  London and Great Lakes Reinsurance (UK) PLC  in a sum which

exceeds the minimum jurisdictional limits of the Court, for which additional amount of

$2,100,000.00  Plaintiff  hereby sues.

## XXII.  TWELFTH  CAUSE OF ACTION:  CIVIL CONSPIRACY

160. Plaintiff realleges all of the allegations set forth in paragraphs 1-159 herein as if fully

copied and set forth at length.   Plaintiff  further alleges that Conspiracy consists of the following

elements: (1) Two or more persons; (2) an object to be accomplished; (3) a meeting of the minds

on the object or course of action; (4) one or more unlawful, overt acts; and (5) damages as the

proximate result.   In the case at hand, we have (1) Defendants (2) who sought to accomplish the

threatened foreclosure sale of the property and diversion of insurance proceeds from Plaintiff and

the avoidance of paying additional  insurance proceeds; (3) agreed how to go about inducing the

threatened foreclosure sale of the property and diversion of insurance proceeds from Plaintiff and

the avoidance of paying additional  insurance proceeds (4) who unlawfully made fraudulent

statements written and oral statements regarding  material representations made by Bank of

America and Specialized Loan Servicing and Bank of New York Mellon represented that the

insurance flood proceeds would be released to The Estate of Bonell Rashti and that Bank of

America and Specialized Loan Servicing and Bank of New York Mellon would cooperate and act

in good faith with  The Estate of Bonell Rashti and that Bank of America and Specialized Loan

Servicing and Bank of New York Mellon would take appropriate action to be sure the flood

insurers timely and completely paid insurance proceed and that The Estate of Bonell Rashti was

the insured under the flood insurance policies in question and material representations made by

QBE Americas, Inc. and/or  BRIT Insurance and/or Certain Underwriters at Lloyds,  London and

Great Lakes Reinsurance (UK) PLC  represented that the insurance flood proceeds would be

released to The Estate of Bonell Rashti and that  QBE Americas, Inc. and/or  BRIT Insurance

and/or Certain Underwriters at Lloyds,  London and Great Lakes Reinsurance (UK) PLC would

cooperate and act in good faith with  The Estate of Bonell Rashti and that  QBE Americas, Inc.

and/or  BRIT Insurance and/or Certain Underwriters at Lloyds,  London and Great Lakes

Reinsurance (UK) PLC  would take appropriate action to be sure the flood insurance claims were timely and completely paid and that The Estate of Bonell Rashti was the insured under the flood insurance policies in question; (5) and subsequently damaged Plaintiff by failing to turn over flood insurance proceeds and failing to pay additional flood insurance proceeds .  In *Carroll v. Timmers Chevrolet, Inc.*, 592 S.W.2d 922 (Tex. 1979), the Court cites its own precedent from *Great National Life Ins. Co. v. Chapa*, 377 S.W.2d 632 (Tex. 1964), stating that it is not the agreement itself that leads to a claim of Civil Conspiracy.  Instead, it is the injury to the plaintiff resulting from an act done pursuant to the common purpose that gives rise to the cause of action. Id. at 925.  In this case, Defendants sought to accomplish a lawful purpose by unlawful means, namely fraud and misrepresentations.  Further, in this case, Defendants sought to accomplish an unlawful purpose by lawful means, namely fraud and misrepresentations.  Further, in this case, Defendants sought to accomplish an unlawful purpose by an unlawful means, namely fraud and misrepresentations.

161.  The Texas Supreme Court in *Carroll v. Timmers* also specifically recognizes longstanding precedent that "the common purpose from which conspiracy liability arises may be established by reasonable inferences."   As the Texas Supreme Court states in *Southwestern Bell Telephone v. Delanney*, if the defendant's conduct would give rise to liability independent of the fact that a contract exists between the parties, the plaintiff's claim may also sound in tort. *Southwestern Bell Telephone Co. V. Delanney*, 809 S.W.2d 493, 494 (Tex. 1991).

162.  Plaintiff  has suffered damages resulting from such conspiracy to damage Plaintiff  in an amount in excess of $577,291.33, for which Plaintiff  seeks recovery herein.

## XXIII.        THIRTEENTH  CAUSE OF ACTION:  EXEMPLARY DAMAGES AGAINST DEFENDANTS

163. Plaintiff realleges all of the allegations set forth in paragraphs 1-162 herein as if fully copied and set forth at length and Plaintiff further alleges that by reason of the fact that Defendants knew that the representations described above were false at the time they were made and the actions were unlawful, the representations were willful and malicious and constitute

conduct for which the law allows the imposition of exemplary damages. In particular, Defendants willfully and intentionally unlawfully made fraudulent statements written and oral statements regarding  material representations made by Bank of America and Specialized Loan Servicing and Bank of New York Mellon represented that the insurance flood proceeds would be released to The Estate of Bonell Rashti and that Bank of America and Specialized Loan Servicing and Bank of New York Mellon would cooperate and act in good faith with  The Estate of Bonell Rashti and that Bank of America and Specialized Loan Servicing and Bank of New York Mellon would take appropriate action to be sure the flood insurers timely and completely paid insurance proceed and that The Estate of Bonell Rashti was the insured under the flood insurance policies in question and material representations made by  QBE Americas, Inc. and/or  BRIT Insurance and/or Certain Underwriters at Lloyds,  London and Great Lakes Reinsurance (UK) PLC  represented that the insurance flood proceeds would be released to The Estate of Bonell Rashti and that  QBE Americas, Inc. and/or  BRIT Insurance and/or Certain Underwriters at Lloyds,  London and Great Lakes Reinsurance (UK) PLC would cooperate and act in good faith with  The Estate of Bonell Rashti and that  QBE Americas, Inc. and/or  BRIT Insurance and/or Certain Underwriters at Lloyds,  London and Great Lakes Reinsurance (UK) PLC  would take appropriate action to be sure the flood insurance claims were timely and completely paid and that The Estate of Bonell Rashti was the insured under the flood insurance policies in question.  In this connection, Plaintiff will show that Plaintiff has incurred significant expenses, including attorney's fees and other damages, in the investigation and prosecution of this action. Accordingly, Plaintiff requests that exemplary damages be awarded against Defendants jointly and severally in a sum which exceeds the minimum jurisdictional limits of the Court, for which additional amount of $2,100,000.00 Plaintiff  hereby sues.

**XXIV.      FOURTEENTH  CAUSE OF ACTION: VIOLATIONS OF THE TEXAS INSURANCE CODE; NONCOMPLIANCE WITH TEXAS INSURANCE CODE CHAPTER 541: "UNFAIR COMPETITION AND UNFAIR PRACTICES ACT"**

164. Plaintiff realleges all of the allegations set forth in paragraphs 1-163  herein as if fully

copied and set forth at length.   Plaintiff further alleges that QBE Americas, Inc. and/or BRIT Insurance and/or Certain Underwriters at Lloyds, London and Great Lakes Reinsurance (UK) PLC's conduct constitutes multiple violations of the Texas Unfair Competition and Unfair Practices Act. TEX. INS. CODE Chapter 541.   All violations under this article are made actionable by TEX. INS. CODE Section 541.151.

165. QBE Americas, Inc. and/or BRIT Insurance and/or Certain Underwriters at Lloyds, London and Great Lakes Reinsurance (UK) PLC's practice, as described above, of misrepresenting to Plaintiff material facts relating to the coverage at issue, constitutes an unfair method of competition and an unfair and deceptive act or practice in the business of insurance. TEX. INS. CODE Sections 541.051, 541.060 and 541.061.

166.   QBE Americas, Inc. and/or BRIT Insurance and/or Certain Underwriters at Lloyds, London and Great Lakes Reinsurance (UK) PLC's unfair settlement practice, as described above, of failing to attempt in good faith to effectuate a prompt, fair, and equitable settlement of the claim, even though QBE Americas, Inc. and/or BRIT Insurance and/or Certain Underwriters at Lloyds, London and Great Lakes Reinsurance (UK) PLC's liability under the policies was reasonably clear, constitutes an unfair method of competition and an unfair and deceptive act or practice in the business of insurance. TEX. INS. CODE Sections 541.051, 541.060 and 541.061.

167. QBE Americas, Inc. and/or BRIT Insurance and/or Certain Underwriters at Lloyds, London and Great Lakes Reinsurance (UK) PLC's unfair settlement practice, as described above, of failing to promptly provide Plaintiff with a reasonable explanation of the basis in the policies, in relation to the facts or applicable law, for their offer of a compromise settlement of the claim, constitute an unfair method of competition and an unfair and deceptive act or practice in the business of insurance. TEX. INS. CODE ANN. Sections 541.051, 541.060 and 541.061.

168. QBE Americas, Inc. and/or BRIT Insurance and/or Certain Underwriters at Lloyds, London and Great Lakes Reinsurance (UK) PLC's unfair settlement practice, as described above, of failing within a reasonable time to affirm or deny coverage of the claim to Plaintiff or to submit a reservation of rights to Plaintiff, constitutes an unfair method of competition and an unfair and

deceptive act or practice in the business of insurance. TEX. INS. CODE Sections 541.051, 541.060 and 541.061.

169.    QBE Americas, Inc. and/or  BRIT Insurance and/or Certain Underwriters at Lloyds,  London and Great Lakes Reinsurance (UK) PLC's  unfair settlement practice  as described above, of refusing to pay Plaintiff's claim without conducting a reasonable investigation, constitutes an unfair method of competition and an unfair and deceptive act or practice in the business of insurance. TEX. INS. CODE Sections 541.051, 541.060 and541.061.

**XXV.       FIFTEENTH  CAUSE OF ACTION: NONCOMPLIANCE WITH TEXAS INSURANCE CODE CHAPTER 542: "THE PROMPT OF PAYMENT OF CLAIMS ACT"**

170. Plaintiff realleges all of the allegations set forth in paragraphs 1-169  herein as if fully copied and set forth at length.   Plaintiff  further alleges QBE Americas, Inc. and/or  BRIT Insurance and/or Certain Underwriters at Lloyds,  London and Great Lakes Reinsurance (UK) PLC's conduct constitutes multiple violations of the Texas Prompt Payment of Claims Act. TEX. INS. CODE Chapter 542. All violations made under this article are made actionable by TEX. INS. CODE Section 542.060.

171.    QBE Americas, Inc. and/or  BRIT Insurance and/or Certain Underwriters at Lloyds,  London and Great Lakes Reinsurance (UK) PLC's failure, as described above, to acknowledge receipt of Plaintiff's claim, commence investigation of the claim, and request from Plaintiffs all items, statements, and forms that they reasonably believed would be required within the applicable time constraints, constitutes a non-payment of the claim. TEX. INS. CODE Sections 542.055-542.060.

172.    QBE Americas, Inc. and/or  BRIT Insurance and/or Certain Underwriters at Lloyds,  London and Great Lakes Reinsurance (UK) PLC's delay of payment of Plaintiffs' claim, as described above, following their receipt of all items, statements, and forms reasonably requested and required, longer than the amount of time provided  for, constitutes a non-prompt payment of the claim. TEX INS. CODE Sections 542.055-542.060.

**XXVI.       SIXTEENTH  CAUSE OF ACTION: BREACH OF THE DUTY OF GOOD**

**FAITH AND FAIR DEALING**

173. Plaintiff realleges all of the allegations set forth in paragraphs 1-172 herein as if fully copied and set forth at length.   Plaintiff  further alleges QBE Americas, Inc. and/or  BRIT Insurance and/or Certain Underwriters at Lloyds,  London and Great Lakes Reinsurance (UK) PLC's  conduct constitutes a breach of the common law duty of good faith and fair dealing owed to insureds in insurance contracts.

174.  QBE Americas, Inc. and/or  BRIT Insurance and/or Certain Underwriters at Lloyds, London and Great Lakes Reinsurance (UK) PLC's failure, as described above to adequately and reasonably investigate and evaluate Plaintiff's claim, although at that time QBE Americas, Inc. and/or  BRIT Insurance and/or Certain Underwriters at Lloyds,  London and Great Lakes Reinsurance (UK) PLC knew or should have known by the exercise of reasonable diligence that their liability was reasonably clear, constitutes a breach of the duty of good faith and fair dealing.

XXVII.        **SEVENTEENTH  CAUSE OF ACTION: BREACH OF THE IMPLIED  DUTY TO COOPERATE THAT IS IMPLIED INTO CONTRACTS BY QBE AMERICAS, INC. AND/OR  BRIT INSURANCE AND/OR CERTAIN UNDERWRITERS AT LLOYDS, LONDON AND GREAT LAKES REINSURANCE (UK) PLC**

175. Plaintiff realleges all of the allegations set forth in paragraphs 1-174  herein as if fully copied and set forth at length.   Plaintiff  further alleges QBE Americas, Inc. and/or  BRIT Insurance and/or Certain Underwriters at Lloyds,  London and Great Lakes Reinsurance (UK) PLC's  conduct constitutes a breach of the common law implied  duty to cooperate that is implied into contracts.

176.  QBE Americas, Inc. and/or  BRIT Insurance and/or Certain Underwriters at Lloyds, London and Great Lakes Reinsurance (UK) PLC's failure, as described above to cooperate with Plaintiff concerning Plaintiffs' claims, constitutes a breach of the implied  duty to cooperate that is implied into contracts.

XXVIII.       **EIGHTEENTH  CAUSE OF ACTION: BREACH OF THE IMPLIED DUTY TO COOPERATE THAT IS IMPLIED INTO CONTRACTS BY BANK OF AMERICA AND SPECIALIZED LOAN SERVICING AND BANK OF NEW YORK MELLON**

177. Plaintiff realleges all of the allegations set forth in paragraphs 1-176  herein as if fully copied and set forth at length.   Plaintiff  further alleges Bank of America and Specialized Loan Servicing and Bank of New York Mellon's  conduct constitutes a breach of the common law implied  duty to cooperate that is implied into contracts.

178.  Bank of America and Specialized Loan Servicing and Bank of New York Mellon's failure, as described above to cooperate with Plaintiff concerning Plaintiffs' claims, constitutes a breach of the implied  duty to cooperate that is implied into contracts.

**XXIX.       NINETEENTH  CAUSE OF ACTION: PROMISSORY ESTOPPEL BY  BANK OF AMERICA AND SPECIALIZED LOAN SERVICING AND BANK OF NEW YORK MELLON**

179. Plaintiff realleges all of the allegations set forth in paragraphs 1-178  herein as if fully copied and set forth at length.   To the extent not inconsistent herewith, Plaintiff  further alleges Bank of America and Specialized Loan Servicing and Bank of New York Mellon's  conduct and actions committed   constitutes promissory estoppel because:

A.       Bank of America and Specialized Loan Servicing and Bank of New York Mellon made a promise to Plaintiff;

B.       Plaintiff reasonably and substantially relied on the promise to it's detriment;

C.        Plaintiff's reliance was foreseeable by Bank of America and Specialized Loan Servicing and Bank of New York Mellon; and,

D.        Injustice can be avoided only by enforcing Bank of America and Specialized Loan Servicing and Bank of New York Mellon's promise.

**XXX. TWENTIETH  CAUSE OF ACTION: PROMISSORY ESTOPPEL BY QBE AMERICAS, INC. AND/OR  BRIT INSURANCE AND/OR CERTAIN UNDERWRITERS AT LLOYDS,  LONDON AND GREAT LAKES REINSURANCE (UK) PLC**

180. Plaintiff realleges all of the allegations set forth in paragraphs 1-179  herein as if fully copied and set forth at length.   To the extent not inconsistent herewith, Plaintiff  further alleges QBE Americas, Inc. and/or  BRIT Insurance and/or Certain Underwriters at Lloyds,  London and Great Lakes Reinsurance (UK) PLC's  conduct and actions committed   constitutes promissory

estoppel because:

A.      QBE Americas, Inc. and/or  BRIT Insurance and/or Certain Underwriters at
         Lloyds,  London and Great Lakes Reinsurance (UK) PLC  made a promise to
         Plaintiff ;

B.      Plaintiff reasonably and substantially relied on the promise to it's detriment;

C.       Plaintiff's reliance was foreseeable by QBE Americas, Inc. and/or  BRIT
         Insurance and/or Certain Underwriters at Lloyds,  London and Great Lakes
         Reinsurance (UK) PLC; and,

D.       Injustice can be avoided only by enforcing QBE Americas, Inc. and/or  BRIT
         Insurance and/or Certain Underwriters at Lloyds,  London and Great Lakes
         Reinsurance (UK) PLC's promise.

**XXXI.      TWENTY-FIRST  CAUSE OF ACTION: VIOLATIONS OF RESPA AND
         REGULATION X OF THE CODE OF FEDERAL REGULATIONS**

181. Plaintiff realleges all of the allegations set forth in paragraphs 1-180  herein as if fully
copied and set forth at length.   To the extent not inconsistent herewith, Plaintiff  further alleges
the acts, conduct and omissions of Bank of America and Specialized Loan Servicing and Bank of
New York Mellon which at all material times hereto were acting in their capacity as a "mortgage
servicer" also constitute violations of Regulation X of the Code of Federal Regulations
established by the Consumer Financial Protection Bureau, 12 CFR section 1024.41 et seq., which
became effective January 10, 2014, because Bank of America and Specialized Loan Servicing and
Bank of New York Mellon and/or its/their various agents, representatives or employees,
committed numerous violations of the statute, and the statutory violations are a producing cause
of the actual damages sustained and incurred by Plaintiff in excess of the minimum jurisdictional
limits of this court.

182.     Pursuant to the Real Estate Settlement Procedures Act (RESPA), 12 USC section
2605(f), Plaintiff has a private right of action providing for remedies for the claimed breaches of
Regulation X, including actual damages, costs, statutory damages and attorneys fees.

183.    Plaintiff's loan is a "federally regulated mortgage loan" as that term is defined by ), 12 CFR  section 1026.41(e)(4), and  Bank of America and Specialized Loan Servicing and Bank of New York Mellon are subject to these regulations and you not qualify with the exception of a "qualified lender" as deemed in 12 CFR  section 617.700.

184.    Specifically Bank of America and Specialized Loan Servicing and Bank of New York Mellon's acts, conduct and/or missions of failing, neglecting   or refusing to provide Plaintiff with any definitive reason why it's numerous and repeated requests for a loan modification or other mortgage relief assistance had been denied, and instead of actually providing any type of substantive review and response to Plaintiff's requests, Bank of America and Specialized Loan Servicing and Bank of New York Mellon proceeded to start to post Plaintiff's former homestead property for foreclosure sale, all of which acts, conduct or omissions constitute violations of Regulation X, 12 CFR  section 1024(f)(2)(I), which provides in pertinent part that Bank of America and Specialized Loan Servicing and Bank of New York Mellon cannot file for judicial or nonjudicial foreclosure while the borrower, Plaintiff, has submitted a complete loss mitigation application that remains pending, and are a producing cause of the actual damages sustained and incurred by Plaintiff in excess of the minimum jurisdictional limits of this court.

### XXXII.        TWENTY-SECOND  CAUSE OF ACTION: VIOLATIONS OF THE TEXAS DEBT COLLECTION ACT

185. Plaintiff realleges all of the allegations set forth in paragraphs 1-184  herein as if fully copied and set forth at length.   Plaintiff  further alleges in addition, the subsequent acts, conduct in or omissions of Bank of America and Specialized Loan Servicing and Bank of New York Mellon, who were acting as "mortgage servicer"  of Plaintiff's loan, of failing to provide Plaintiff with the required notice of default and opportunity to cure notice expressly required under the terms of the deed of trust, and instead proceeding to accelerate the loan maturity
 and starting to post Plaintiff's property for foreclosure sale each also constitute violations of the Texas debt collection act, TEXAS FINANCE CODE SECTION 392.001 et seq.,  and an intentional and/or knowingly misrepresentation of character, amount or extent of the debt to be

collected, and which false representation of material fact Plaintiff relied upon to it's detriment, and which are producing cause of the actual damages sustained and incurred by Plaintiff in excess of the minimum jurisdictional limits of this court.

186.     As each of the acts, conduct and/or omissions of Bank of America and Specialized Loan Servicing and Bank of New York Mellon constitute violations of the Texas Debt Collection Act, and were committed intentionally, knowingly and/or with malice, or a conscious indifference to the rights of Plaintiff, Plaintiff is entitled to and hereby seeks an award of exemplary damages in excess of the minimum jurisdictional limits of this court.

### XXXIII.     TWENTY-THIRD  CAUSE OF ACTION:  EXEMPLARY DAMAGES AGAINST DEFENDANTS

187. Plaintiff realleges all of the allegations set forth in paragraphs 1-186 herein as if fully copied and set forth at length and Plaintiff would further show that by the various acts, conduct and/or admissions of Defendants complained of herein were committed knowingly, willfully, intentionally, and with actual awareness, and with the specific and predetermined intention of enriching said Defendants at the expense of Plaintiff. In order to punish the Defendants for such unconscionable overreaching and to deter such actions and/or omissions in the future, Plaintiff also seeks recovery from Defendants for exemplary damages as provided by section 41.003(a)(1) of the Texas Civil Practices and Remedies Code.

### XXXIV.     TWENTY-FOURTH  CAUSE OF ACTION:  ATTORNEY'S FEES

188.     Plaintiff realleges all of the allegations set forth in paragraphs 1-1187 herein as if fully copied and set forth at length. As a result of Defendants' conduct, Plaintiff has been required to obtain the services of the undersigned attorney for the filing, prosecution and trial of this cause, and therefore seeks an award of reasonable and necessary attorney's fees pursuant to applicable law.

**WHEREFORE, PREMISES CONSIDERED**, Plaintiff respectfully prays that Defendants be cited to appear and answer herein, and that upon final trial hereof, Plaintiff have judgment against Defendants jointly and severally for:

1.      Plaintiff seeks a judgment for all of its economic and additional damages as described above; and

2.      The amount of  $426,110.00   in damages;

3.      The amount of  $73,473.38   in damages;

4.      The amount of  $77,707.95   in damages;

5.      Treble damages as allowed by applicable law;

6.      Punitive damages as allowed by applicable law;

7.      Actual damages for Defendants' breach of the contract;

8.      Consequential damages for Defendants' breach of the contract;

9.      Reasonable attorneys' fees for all proceedings herein through trial or hearing as appropriate, appeal and application for writ of error;

10.     Prejudgment and post judgment interest at the maximum legal rates, respectively, as provided by law;

11.     Statutory treble damages and/or exemplary damages in an amount set by the Court.

12.     Costs of court; and

13.     Such other and further relief, both general and special, at law or in equity, to which Plaintiff  may show itself justly entitled.


**Respectfully Submitted By:**

**RASHTI AND MITCHELL**

/s/ Timothy T. Mitchell
Timothy T. Mitchell, Esquire
Texas State Bar No. 14223000
tim@rashtiandmitchell.com
Donna Kaye Rashti, Esquire
Texas State Bar No. 16553400
donna@rashtiandmitchell.com
4422 Ridgeside Drive
Dallas, Texas 75244
(972) 490-1929
(972) 503-9611 (fax)
**Attorneys for Plaintiff**